LEATHERS. The (CARROLL v.). See Case No. 2,455.

## Case No. 8,164.

### LEATHERS v. SALVOR WRECKING, ETC., CO.

[2 Woods, 680.] [1]

Circuit Court, S. D. Mississippi. May Term, 1875.

WAR—OWNERSHIP OF CONFEDERATE STATES' PROPERTY—EVIDENCE—PHOTOGRAPHIC COPIES OF PUBLIC DOCUMENTS.

1. A steamboat, while under impressment by the Confederate States, was sunk, and was afterwards paid for in full by the Confederate government. *Held*, that the wreck thereby became the property of the Confederate government, and in the surrender of the Confederate forces to the Federal forces, became the property of the United States.

2. Photographic copies of public documents on file in the departments at Washington, which public policy requires should not be removed, are admissible in evidence when their genuineness is authenticated in the usual way, by proof of handwriting.

[Cited in Eborn v. Zimpelman, 47 Tex. 503; Crane v. Dexter, Horton & Co. (Wash.) 32 Pac. 224.]

[Appeal from the district court of the United States for the Southern district of Mississippi.]

The libel was filed [by Thomas P. Leathers] to recover damages of the respondent [the Salvor Wrecking & Transportation Company] for wrecking and dismantling the steamboat Natchez, which was sunk in the Yazoo river, and which the libelant claimed to be his property. The defense was, that the Natchez was sunk while under impressment in the service of the Confederate States, and was paid for in full by the Confederate government, and thereby became the property of that government, and upon the surrender of the Confederate forces to the Federal forces, she became the property of the United States, and that she was raised and dismantled by the respondents under a contract with, and by authority of the United States.

J. W. M. Harris, for libelant.
W. B. Pittman, for respondent.

BRADLEY, Circuit Justice. The respondents show that the machinery of the steamer Natchez was rescued from the Yazoo river after the close of the late war, under authority from, and by contract with the government of the United States, by which the salvors were to have one-half of all that should be realized after the payment of expenses. If the steamer Natchez was impressed into the service of the Confederate States government, and was burnt and sunk whilst in that service, and if full compensation for the vessel's loss was paid to the libelant by that government, the property

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

of the wreck thereafter belonged to it; and at the close of the war, became the property of the government of the United States, which thereupon acquired a right to dispose of the wreck as it saw fit. It is evident that the government of the United States acted on the supposition that it was the owner of, and entitled to the control of the wreck. The authority given to the wreckers, and the contract made with them, are evidence of this. The latter got only one-half of the net proceeds of the property. The balance was retained by the government.

Without stopping to inquire whether thus acting under the authority of the government of the United States would or would not be a full defense for the wreckers, and for the respondents in this suit, it is clear from the evidence that the libelant's transactions with the Confederate States government bear out the hypothesis that he obtained therefrom the full value of the steamboat, and that whatever was left of her hull and machinery belonged to that government, and, by consequence, became the property of the United States.

The libelant, however, testifies, no doubt sincerely, that the amount received by him from the Confederate government, was received as compensation for the services of the steamboat. But a long period of time has elapsed since the events occurred; and an examination of the documents themselves is conclusive that the said amount was the valuation of the vessel itself, and was so understood by the libelant at that time, and received by him as such. It is unnecessary to go into a minute examination of the papers for the purpose of showing the truth of this proposition; it is too apparent for argument.

It is objected by the counsel for the libelant, that the documentary evidence in question is not properly authenticated. We think it is sufficiently authenticated to make it competent. The original papers are on file in the war department, and cannot, without public detriment and inconvenience, be removed. Photographic copies are the best evidence that the case admits of. The wonderful art by which they are reproduced gives us, as we may say, duplicate originals; and in the case of public records or documents properly deposited in the public archives of the country, and which the public interest requires should be there kept and preserved, no better evidence of their character and authenticity can be had than such a reproduction of them by the operation of natural agencies, and an authentication of their genuineness in the usual way, by proof of handwriting. We think the evidence entirely competent and entirely conclusive. We come to the conclusion, therefore, that the libelant had no interest in the wreck at the time of its recovery, and that he cannot recover in this suit. The conduct of the libelant, since the war, is corroborative

of this conclusion. He lay by for almost or quite six years after he says he saw the machinery at Vicksburg, on the vessel now attached, before bringing his suit. This is a period which of itself would present strong evidence of laches, and a stale demand, which is a defense in admiralty proceedings. These views render it unnecessary for us to consider more fully the objection as to the validity of the amendment made in the libel, concerning which grave doubts may well be entertained. The decree of the district court must be reversed, and the libel dismissed, with costs.

---

LEATHERS (UNITED STATES v.). See Case No. 15,581.

LEATHERS (WERK v.). See Case No. 17,415.

LEAVENWORTH (JEWETT v.). See Case No. 7,312.

LEAVENWORTH (PACIFIC RAILROAD CO. v.). See Case No. 10,649.

LEAVENWORTH (RANLETT v.). See Case No. 11,569.